## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JENNIFER B., <br><br> Plaintiff, <br><br> v. <br><br> LELAND DUDEK, <br> ACTING COMMISSIONER OF SOCIAL <br> SECURITY,[1] <br><br> Defendant. | No. 22 CV 06352 <br><br> Magistrate Judge McShain |

### MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer B. brings this action for judicial review of the Social Security Administration's (SSA) decision denying her application for benefits. For the following reasons, plaintiff's request to reverse the SSA's decision [15][2] is denied, defendant's motion for summary judgment [20] is granted, and the decision denying the application for benefits is affirmed.

### Background

On February 15, 2021, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. In both applications, plaintiff alleged a disability onset date of December 16, 2018. Plaintiff's claims were denied initially on July 21, 2021, and upon reconsideration on October 5, 2021. Plaintiff requested a hearing, which was held before an administrative law judge (ALJ) on February 22, 2022. On March 28, 2022, the ALJ issued an unfavorable decision finding plaintiff not disabled.

In evaluating a claim for disability benefits, ALJs follow a five-step, sequential process. *Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020). The ALJ must evaluate the following:

---

[1] In accordance with Fed. R. Civ. P. 25(d), Leland Dudek, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Martin O'Malley.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [10], which refer to the page numbers in the bottom right corner of each page.

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner] ...; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (alterations in original) (quoting *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000)); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. *Fetting*, 62 F.4th at 336 (citing *Clifford*, 227 F.3d at 868). "At step five, the burden shifts to the agency to show that 'there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations.'" *Id.* at 336–37 (quoting *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022)); 20 C.F.R. § 416.960(c)(2).

The ALJ reviewed plaintiff's disability claim in accordance with the SSA's five-step sequential evaluation process. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since December 16, 2018, the alleged onset date. At step two, the ALJ found that plaintiff has the following severe impairments: obesity, fibromyalgia, venous insufficiency of the legs, asthma/COPD, and obstructive sleep apnea. The ALJ found that plaintiff has several non-severe impairments, including generalized anxiety disorder. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before turning to step four, the ALJ determined that plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) and can occasionally balance, stoop, and climb ramps and stairs; never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds; occasionally use arm controls for pushing and/or pulling; never work around unprotected heights, open flames, or unprotected dangerous moving machinery; and can have no concentrated exposure to dusts, fumes, gases, or poor ventilation. At step four, the ALJ concluded that plaintiff is unable to perform any past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Accordingly, the ALJ found that plaintiff has not been under a disability as defined in the Social Security Act from December 16, 2018 through the date of the decision.

The Appeals Council denied review on September 22, 2022, rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955 & 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[3]

---

[3] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [11].

## Legal Standard

Courts "apply a very deferential standard of review to the ALJ's decision." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (citation and internal quotations omitted). In its "extremely limited" role, *id.*, the Court must "ensur[e] that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024) (citing *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). *See also Stephens*, 888 F.3d at 327 ("Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). *See also Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (same). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). "If substantial evidence supports the ALJ's conclusions, the court 'must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding.'" *Chavez*, 96 F.4th at 1021 (quoting *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016)).

## Discussion

Plaintiff argues that the ALJ erred in two ways: (1) the ALJ's mental RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinions of the state agency psychological consultants and (2) the ALJ failed to properly consider if use of an assistive device was necessary.

### A. Mental RFC Determination and Evaluation of Opinion Evidence

The ALJ concluded that plaintiff's generalized anxiety disorder is a non-severe impairment. [10-1] 25–26. Specifically, the ALJ assessed the paragraph B criteria and found that plaintiff has a mild limitation in concentrating, persisting, or maintaining pace and no limitation in the three other areas. Accordingly, the ALJ concluded that "the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." [*Id.*] 26 (citing 20 CFR 404.1520a(d)(1) and 416.920a(d)(1)). Regardless, in crafting the RFC, "the

3

ALJ must later consider the limitations imposed by all impairments, severe and non-severe." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (citing 20 C.F.R. § 404.1523; *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010)). "Crucially, however, an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). The ALJ acknowledged that the limitations identified in the paragraph B criteria are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process, but that the mental RFC assessment used at steps 4 and 5 requires a more detailed assessment. [10-1] 26. The ALJ engaged in this more detailed assessment but ultimately did not include any restrictions related to plaintiff's alleged mental impairments in the RFC. [*Id.*] 26–28, 30.

Plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinions of the state agency psychological consultants. [15] 10. Because plaintiff filed her case after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply for evaluating medical opinions. ALJs must consider the medical source provider's opinion "using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(a). These factors are (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the record or an understanding of Social Security disability policies and requirements. "In weighing the persuasiveness of a medical opinion, the 'most important factors' an ALJ considers are the opinion's 'supportability' and 'consistency' with the record." *Desotelle v. Kijakazi*, No. 22-1602, 2023 WL 4146246, at *2 (7th Cir. June 23, 2023) (citing 20 C.F.R. § 404.1520c(b)(2)). Supportability refers to the "internal supportability" of a medical opinion and assesses "the objective medical evidence and supporting explanations presented by a medical source" in supporting the opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency assesses how consistent a medical opinion is with the record evidence as a whole, including "evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* at § 404.1520c(c)(2). The regulation also contains articulation requirements, which include requiring ALJs to explicitly "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions" in the decision. 20 C.F.R. § 404.1520c(b)(2); *Bakke*, 62 F.4th at 1067–68. ALJs "may, but are not required to," explain how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

Courts "do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and . . . only overturn that weighing if no reasonable mind could accept the ALJ's conclusion." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). "An ALJ has 'final responsibility' for determining a claimant's residual functional capacity and need not adopt any one doctor's opinion." *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021) (citations omitted). "[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely

4

on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citing *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995)). Nor is an ALJ required to adopt the opinions of the agency doctors. *See, e.g.*, *Czarnecki v. Colvin*, 595 F. App'x 635, 642 (7th Cir. 2015); *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011); *Diaz v. Berryhill*, No. 16 C 11419, 2017 WL 4163959, *2 (N.D. Ill. Sept. 20, 2017).

The ALJ summarized the opinion of Dr. Taylor, the state agency consultant who initially reviewed plaintiff's psychological impairments in July 2021 and opined that plaintiff has mild restrictions in understanding, remembering, or applying information and in concentration, persistence, or maintaining pace, as well as moderate restrictions with adapting and managing oneself and interacting with others. [10-1] 28. The ALJ summarized the limitations included in Dr. Taylor's opinion, as well as those imposed by Dr. Voss, who reviewed plaintiff's psychological impairments on reconsideration in October 2021. The ALJ found the opinions of Drs. Taylor and Voss not persuasive because they are not supported by or consistent with the objective evidence or course of treatment. Specifically, the ALJ pointed out that the only evidence Drs. Taylor and Voss cited in support of their opinions was the July 2021 psychological consultation completed by Dr. Tolley, and that "the only objective finding[s] in that evaluation were related to poor reasoning and some tearfulness when talking about [plaintiff's] weight gain." The ALJ noted that Drs. Taylor and Voss did not cite any evidence to support limitations on interaction. The ALJ also concluded that additional evidence at the hearing level and the lack of testimony concerning mental impairment "does not reflect any restrictions in mental functioning related to non-severe generalized anxiety disorder."

Plaintiff disagrees with this assessment, arguing that the ALJ improperly relied on a selective reading of Dr. Tolley's consultative exam in order to support her conclusion. [15] 11–12. Plaintiff points out that Dr. Tolley also noted that plaintiff "endorsed symptoms of depression and anxiety including constant sadness, weight gain, low energy, diminished interest in activities and constant worries, fear of height and driving on highways, and becoming easily agitated," as well as "demonstrated difficulty adjusting her ongoing medical conditions." However, before turning to the opinions of Drs. Taylor and Voss, the ALJ's decision thoroughly summarized the consultative exam with Dr. Tolley, including all of these findings that plaintiff emphasizes word for word. [10-1] 27–28. Furthermore, these are issues the plaintiff subjectively reported during the consultative exam and the ALJ's statement regarding the *objective* findings of the exam is not inconsistent.

Plaintiff argues that the ALJ also relied on a selective reading of the record evidence in finding the opinions of Drs. Taylor and Voss not consistent with the record. [15] 12. Plaintiff highlights records from a February 17, 2020 examination and a July 9, 2020 examination. [*Id.*] Plaintiff argues that the ALJ "cited to no

5

evidence to the contrary of the State Agency opinions and instead summarily concluded they were inconsistent with the record." [*Id.*] 13. This is incorrect and based on a limited view of the ALJ's decision. The ALJ explicitly included both of these examinations in her review of the record evidence:

> Psychiatric evaluation in February 2020 indicated she had good judgment but was anxious and depressed (Exhibit 2F/21). She was noted to be tearful during the examination, reporting the recent loss of her father and her fear of dying along with financial difficulties (Exhibit 2F/22). She was restarted on Xanax 0.25 milligrams and Lexapro 10 milligrams after reporting she previously felt well under that regimen (Exhibit 2F/22). . . . In July 2020, she was noted to have poor insight and appeared anxious and tearful throughout her examination (Exhibit 2F/12).

[10-1] 27. The ALJ also summarized other evaluations from January 2019 to January 2022. [*Id.*] 27–28. Despite plaintiff's assertion, this included citations to a great deal of record evidence demonstrating normal examination findings such as good judgment; normal mood and affect; active and alert; oriented to time, place, and person; no depression; appropriate, polite, pleasant, and cooperative; and normal recent and remote memory. Furthermore, in assessing the paragraph B criteria, the ALJ noted plaintiff's own reports of her abilities demonstrating minimal or no limitations and that "neurological and psychological examinations since the alleged onset date have noted her having an appropriate affect, normal mood, normal behavior, and normal judgment and thought content." [*Id.*] 25–26. The Seventh Circuit has encouraged reviewing courts to read an ALJ's decision holistically. *See, e.g.*, *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021); *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985). The Court will not discount information or an ALJ's consideration of the evidence "simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout [her] decision would be redundant." *Curvin*, 778 F.3d at 650.

Based on the foregoing, the Court finds that in assessing plaintiff's mental impairments, substantial evidence supports the ALJ's evaluation of the opinions of the state agency psychological consultants and that the ALJ built the requisite logical bridge from the evidence to her conclusions. Plaintiff has identified no legal error in the ALJ's analysis nor pointed to any evidence that the ALJ ignored, and the Court cannot agree with plaintiff's assertion that the ALJ's assessment was based on a selective reading of the record. Plaintiff's arguments amount to a disagreement with how the ALJ weighed the evidence, but this Court "cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327; *Chavez*, 96 F.4th at 1021. The Court denies plaintiff's request to remand on this basis.

6

B.  Use of an Assistive Device

Plaintiff argues that the ALJ failed to properly consider whether use of an assistive device was necessary, the ALJ's finding was contrary to "the copious amounts of evidence" in the record that plaintiff requires an assistive device, and the ALJ failed to build a logical bridge from the evidence to her conclusion. [15] 13–15. "A cane or other hand-held assistive device must be incorporated in an RFC if it is a medical necessity." *Heath M. v. Kijakazi*, No. 20 CV 3384, 2023 WL 3652427, at *3 (N.D. Ill. May 25, 2023) (citing *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012)). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). In making this determination, the ALJ "must always consider the particular facts of a case." *Id.*

The ALJ thoroughly summarized and considered the record evidence related to plaintiff's use of an assistive device, beginning with plaintiff's own testimony:

> She testified that the difficulty with her legs reduces her ability to stand and walk, which I note supports my finding that at most she can perform sedentary exertional work. She testified to having a walker, but said she can only walk short distances, such as from a parking lot to the store, and that she's been using the walker for about the past year and also uses a wheelchair for longer distances, such as going to the doctor's office. She testified she has a handicap parking placard.

[10-1] 31. The ALJ found, however, that the "overall record fails to support [plaintiff's] allegations as to the disabling nature of her symptoms." [*Id.*] 32.[4] Summarizing plaintiff's medical records, the ALJ observed the results of examinations and imaging throughout 2019 and 2020 regarding plaintiff's lower extremities, including both normal and abnormal findings:

> With respect to her fibromyalgia and venous insufficiency of the bilateral lower extremities, at Hinsdale Family Medicine Center in January, June, and September 2019 musculoskeletal examinations indicated the extremities had bilateral non-pitting edema and varicosities but no cyanosis. Neurologically, she had an intact gait and station along with grossly intact sensory (Exhibit 2F/31, 36, 45). On musculoskeletal examination in February 2020, she had normal

---

[4] Plaintiff does not raise a challenge to the ALJ's subjective symptom analysis under SSR 16-3p and any such argument is therefore waived. *E.g.*, *Bollas v. Astrue*, 694 F.Supp.2d 978, 990 (N.D. Ill. 2010).

7

movement of all extremities and there was no cyanosis or edema (Exhibit 2F/21). However, she was prescribed Lasix 20 milligrams (Exhibit 2F/23). Musculoskeletal examination in March 2020 again noted swelling in the lower extremities but she had a normal gait and station (Exhibit 2F/16, 17). . . . Musculoskeletal examination in July 2020 returned all normal findings except for nonpitting edema of the lower extremities bilaterally to the knees. Neurologically, she was intact including a normal gait and station (Exhibit 2F/12). She was referred to rheumatology for the pain in the lower limbs and Lasix was increased to 20 milligrams daily (Exhibit 2F/13). An x-ray of the sacroiliac (SI) joints in October 2020 returned normal findings (Exhibit 3F/66). An x-ray of the knees showed no joint space narrowing or erosions (Exhibit 3F/64). An x-ray of the feet showed no definite radiographic evidence of inflammatory or erosive arthritis but did show nonspecific periarticular osteopenia (Exhibit 3F/62). . . . On November 3, 2020, an ultrasound of each knee showed no significant knee joint effusion or Baker's cyst (Exhibit 3F/49-51).

[10-1] 32. The ALJ noted that on November 6, 2020, plaintiff "presented to Dr. Wallin for referral of walker and shower chair" and reported "having increasing loss of mobility, could not perform day to day tasks being dependent on her partner, and could only walk five-to-ten minutes with a cart or leaning on support due to pain and stiffness." The ALJ observed, however, that on examination, plaintiff was in no acute distress, was ambulating normally, and there was no significant swelling at the joints, but Dr. Wallin did note varicose veins on the left thigh with swelling more in that area. [*Id.*] 32–33. The ALJ noted that Dr. Wallin's referral was for vascular surgery. Dr. Wallin's assessment and care plan included other referrals and instructions, none of which included a statement that plaintiff requires a cane, walker, or other device, or even that plaintiff "may benefit from" an assistive device. *See* [10-1] 425–26.

The ALJ continued, summarizing an April 30, 2021 visit to Dr. Kabir for a handicap placard evaluation. [10-1] 33. During this visit, plaintiff reported that it is difficult for her to walk around, she cannot walk far and is using a walker now, and that she "would like a handicap placard service card due to her comorbidities" and "would also like physical therapy to help with her gait." [10-2] 1009–10. The ALJ noted that upon examination, plaintiff's musculoskeletal and neurological findings were normal. Dr. Kabir's assessment and care plan covered several issues, including "completed handicap placard for 3 months" under plaintiff's obesity and referred plaintiff for physical therapy "to help work on exercise and mobility" under plaintiff's difficulty walking. [*Id.*] 1011. Again, this care plan did not include any specific statement from Dr. Kabir that plaintiff required or would benefit from an assistive device. The ALJ also summarized the results of the June 2021 consultative exam with Dr. Rafiq, who noted plaintiff's report that she used a rollator even inside the house

8

and could walk up to one-third of a block with or without the rollator. The ALJ summarized Dr. Rafiq's findings in detail:

> On examination, she was in no acute distress. With the extremities, there were no deformities, bruises, ulcerations, clubbing or cyanosis. There was swelling of the legs positive at 3+ and nonpitting in nature. Musculoskeletal examination indicated she was able to get on and off the examination table with moderate difficulty. She could walk greater than 50 feet without support. Her gait was antalgic without the use of assistive devices. She was unable to do heel to toe walk. She was unable to stand and walk on the toes or the heels bilaterally. She was unable to stand or hop on one leg bilaterally. She was able to squat and rise with moderate difficulty. . . . The range of motion throughout was normal. Straight leg raise test negative bilaterally. Neurologically, she had five-out-of-five power in all limbs. Her sensory examination to soft touch, pinprick, vibration, and monofilament was satisfactory. Her deep tendon reflexes were present, equal, and symmetric.

[10-1] 33. And the ALJ acknowledged that during the psychological consultative exam in July 2021, Dr. Tolley noted that plaintiff was ambulating with a walker.

Plaintiff presented before Dr. Lullo in September 2021 requesting renewal of a handicap placard. [10-2] 1002–07. The ALJ summarized this visit:

> In September 2021, she reported needing a walker or wheelchair for transportation and requested renewal of a handicapped placard (Exhibit 11F/13). On examination she was in no acute distress but had limited ambulation. Musculoskeletal examination was entirely normal but she was noted to have leg edema edema [sic] and varicosities. The varicose veins were in the left leg and there was bilateral nonpitting leg edema greater in the left leg (Exhibit 11F/14). The handicapped placard form was filled out since she had some difficulty ambulating and reported relying on a wheelchair or walker. She was referred to a vein specialist (Exhibit 11F/14).

[10-1] 33–34. After considering all of this record evidence, the ALJ noted that "no physician, including the one who filled out [plaintiff's] applications for handicapped placards, prescribed an assistive device for ambulation." [*Id.*] 34. The ALJ pointed out that instead, plaintiff "was referred to physical therapy and to physical medicine and rehab." Finally, the ALJ observed that upon examinations in January 2022, plaintiff was in no acute distress, was ambulating normally, had a normal gait and station with intact neurological sensory, had full motor strength and full range of motion in all extremities, and had normal reflexes and sensory throughout.

9

The ALJ did not err in observing that "no physician . . . prescribed an assistive device for ambulation." [10-1] 34. Of course, "the lack of a prescription for a cane does not establish that a claimant does not in fact need a cane to ambulate." *Ryon C. v. Kijakazi*, No. 20 C 891, 2021 WL 4552550, at *3 (N.D. Ill. Oct. 5, 2021). And "a prescription for a cane from a medical professional does not *require* a finding of medical necessity[.]" *Vaughn J. v. Kijakazi*, No. 20-cv-4310, 2022 WL 6122658, at *6 (N.D. Ill. Oct. 7, 2022) (emphasis in original) (citing *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010)). But it is an important factor that the ALJ is permitted to consider in assessing the record evidence and determining whether there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96-9p. Nor did the ALJ rely solely on this fact. As demonstrated above, the ALJ considered plaintiff's medical record, including the results of examinations and imaging tests, and plaintiff's subjective complaints. Much of the record evidence regarding plaintiff's use of a device, including records that plaintiff highlights and relies on, are examples of plaintiff's own reports of needing and using an assistive device or treating providers' observations that plaintiff presented at appointments using a device. *See, e.g.*, [10-1] 805, 896, 898, 906; [10-2] 924, 1005, 1009–10, 1014. In a similar case, the Seventh Circuit observed that the record was "replete with references to [the claimant's] use of 'crutches,' 'a crutch,' or 'a cane,' but these mentions are traceable to his self-reports and to physicians' observations that he presented with an assistive device." *Tripp*, 489 F. App'x at 955. The court found that the record adequately supported the ALJ's finding of no medical necessity and that the medical records did not contain any "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary."[5] *Id.* As in the *Tripp* case, plaintiff here does not point to any statement in the record in which a treating physician prescribed or opined that plaintiff required/would benefit from an assistive device, much less any evidence "describing the circumstances for which it is needed." SSR 96-9p. There is no specification about whether plaintiff would require an assistive device all the time, merely periodically, or only in certain situations or for certain distances. Such specifics are important because even finding that a hand-held assistive device *is* medically required is not necessarily incompatible with the ALJ's finding that plaintiff is capable of sedentary work: "Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand." SSR 96-9p.

---

[5] *Compare with Heath M.*, 2023 WL 3652427, at *3–4 (involving record evidence of claimant's doctors noting he may benefit from a cane or other walking device, encouraging him to use a cane, referring for a cane, and advising that he must use a cane or other assistive device) *and Vaughn J.*, 2022 WL 6122658, at *5–6 (involving record evidence of claimant's doctors opining that he required a cane and treating physician prescribing a cane).

The ALJ also considered the opinion evidence in reaching her conclusion that an assistive device was not a medical necessity. Plaintiff points out that Drs. Kareti and Reddy, the state agency consultants, opined that "a medically required hand-held assistive device is necessary for ambulation." [15] 14 (citing [10-1] 103, 136). However, plaintiff identifies no specific error in the ALJ's assessment of these opinions or explains how the ALJ erred in considering them.[6] Rather, plaintiff merely notes that this is "striking" and summarizes some of the ALJ's findings as to these opinions. Plaintiff then points out that the ALJ has an obligation to consider all relevant medical evidence and cannot ignore evidence that points to a disability finding. But the ALJ did not ignore this evidence; she considered the opinions of Drs. Kareti and Reddy alongside all the record evidence and explained why she found their particular opinions regarding the medical necessity of an assistive device unpersuasive.

The ALJ found the opinions of Drs. Kareti and Reddy somewhat persuasive and "not fully supported by and consistent with the medical evidence at the hearing level." [10-1] 36 (citing [*id.*] 118–28, 131–41). In relevant part, the ALJ found that "the medical evidence does not support a medical need for a cane or assistive device." The ALJ noted that the only finding Drs. Kareti and Reddy cited to support this opinion was that plaintiff used an assistive device "during the consultative examination and that she was unable to perform heel walk, toe walk, or hop on one leg, along that she had three-plus edema in the lower extremities." The ALJ also noted that at the reconsideration level, Dr. Reddy indicated that plaintiff "uses a walker or wheelchair, but again failed to cite to any findings of loss of lower extremity functioning." Later in the decision, the ALJ provided more detail as to why she found that "based on this record, contrary to the State agency medical consultant opinions," plaintiff does not need "an assistive device to walk." [*Id.*] 37. For example, the ALJ reiterated that "several examinations of record since the alleged onset date have indicated the claimant having a normal gait without assistive devices." The ALJ found that "the only basis for a device for walking would be [plaintiff's] morbid obesity as there is no documentation of her having arthritis, peripheral neuropathy or neurological loss/instability in the lower extremities." The ALJ also noted that "the neurologist who examined her in January 2022 noted she ambulated independently and had full (5/5) strength in the lower extremities," and that there "was no mention of instability or balance difficulty." And the ALJ observed that when plaintiff was seen the same day by her primary care provider for follow-up of her diabetes mellitus, "she had a normal gait and station along with normal sensation." The ALJ also noted that plaintiff has not been referred to pain management.

Although plaintiff argues that the ALJ relied on a selective reading of the evidence to find that an assistive device was not necessary and impermissibly cherry-

---

[6] Plaintiff bears the burden, and "perfunctory and undeveloped" arguments are considered waived. *See, e.g., Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019); *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

11

picked facts, the Court does not agree. Plaintiff specifically points out that during the consultative exam, Dr. Rafiq observed that plaintiff was able to get on and off the exam table with moderate difficulty, her gait was antalgic without the use of assistive devices, and she was able to squat and rise with moderate difficulty. [15] 14–15 (citing [10-1] 898). Plaintiff also highlights other records documenting observations that she ambulated with a walker. [*Id.*] 15. But the ALJ's decision mentioned and cited all of these findings, [10-1] 32–33, and plaintiff does not point to any record evidence that the ALJ ignored. Rather, plaintiff's arguments amount to a disagreement with how the ALJ weighed the evidence and medical opinions. Again, this Court cannot substitute its own judgment for that of the ALJ's by reevaluating the facts, reweighing the evidence, or resolving debatable evidentiary conflicts. *Chavez*, 96 F.4th at 1021; *Gedatus*, 994 F.3d at 900; *Stephens*, 888 F.3d at 327.

This is not a case where the ALJ failed to consider plaintiff's alleged need for an assistive device, *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013), nor is it a case where the ALJ disregarded a clear statement in the medical record that plaintiff was prescribed or requires an assistive device, *Vaughn J.*, 2022 WL 6122658, at *5–6. Based on the foregoing, the Court finds that substantial evidence supports the ALJ's finding that a hand-held assistive device is not medically necessary and that the ALJ built the requisite logical bridge from the evidence to her conclusions. Plaintiff has identified no legal error in the ALJ's analysis, nor pointed to any evidence that the ALJ ignored. The Court denies plaintiff's request to remand on this basis.

## Conclusion

In its "extremely limited" role to apply a "very deferential standard of review to the ALJ's decision," *Jarnutowski*, 48 F.4th at 773, the Court is persuaded that the ALJ supported the decision with substantial evidence and applied the correct legal standards. *Morales*, 103 F.4th at 472. Accordingly, plaintiff's request to reverse the SSA's decision [15] is denied, defendant's motion for summary judgment [20] is granted, and the decision denying the application for benefits is affirmed.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 31, 2025**